The Honorable the judges of the United States Court of Appeals for the Fourth Circuit. Good afternoon. Mr. Hawkins, we're happy to hear from you. Thank you very much Your Honor. May it please the court, I am Richard Hawkins. I'm here on behalf of the appellant Sheila Holmes and we are here appealing the district court's decision granting summary judgment to the appellee on her ADA claim. I'd like to begin by thanking the court for granting the oral argument and in particular granting it telephonically. I have a face made for radio and so I certainly appreciate appearing in this manner. All kidding aside, Your Honors, we are here appealing an ADA claim judgment and there are three issues that are before the court on appeal. The first two issues are essentially mirror images of material fact exist as to whether or not a steel-toed shoe requirement is an essential function for Ms. Holmes's job. And then at the same time the second issue is whether or not genuine issues of material fact exist as to whether or not a reasonable accommodation is available to Ms. Holmes to exclude her or to exempt her from wearing steel-toed shoes in her job. And then the third issue, more of a procedural point but nevertheless important, which is whether or not the district court abused its discretion in striking the declaration of Arlene Bland as part of the summary judgment record. Now before I go through all of the the points I want to get into as to those issues, I want to emphasize to the court what this case is not and what this what the facts of this case do not show. They do not show that between 2002 and 2013, which the relevant time frames here, the 2002 is when General Dynamics took over the facility with Ms. Holmes and 2013 is when they told Ms. Holmes for the first time that she could not be exempt from the steel-toed shoe requirement. I want to emphasize that in that time frame there were no new laws enacted, there were no certifications created, there were no regulations promulgated that created for General Dynamics or anyone else in this in this facility a previously unknown safety requirement or legal obligation. The law that's in place is OSHA, it was enacted in 1970. The CFR regulation that was in place here and that's governing the PPE was 1974. The record reflects that there are certain kinds of private certifications. There is what's called the ISO 14001, which is a voluntary environmental regulation. The record doesn't reflect this but you can take judicial notice to know that that regulation came into effect in 1996, well before the time period in question. And the same is true for what the record calls an OHSAS 18001, which is a British regulation that came into place in 1999. And the same is also true for for company rules and company procedures. The 36th representative for General Dynamics at JA 293 testified that even as far back as 1998 and continuously without exception all the way through that time period, General Dynamics had always had a steel-toe shoe safety policy requirement. And so it's important to emphasize that at least contextually that there's nothing outside, there's no outside forces, there's nothing independent of the workplace itself that caused any in this time frame. I think the record reflects also, undisputedly, that in this same time frame, Ms. Holmes, she never had this function essential to her. The record reflects of course that Ms. Holmes suffers from a brachymetatarsia, say that fast three times, which is a congenital deformity or congenital disease that caused her to have deformed feet and cause ulcerations on her toes when she wears these steel-toed shoes or when she tried to wear these steel-toed shoes. And she offers also suffers from diabetes, which causes her circulation problems. And I think kind of the best example or best evidence of what kinds of problems that Ms. Holmes faces with these conditions is when she testified in her deposition about this. And this is at JA 84, 85, 86, and 87. And in those cases, it can cause me to have my foot removed. You know, I previously had this this brachymetatarsus when diabetes got diagnosis in her in her very, I think, casual and telling words. She said it put another tinker into it. You cannot have sores, you cannot have blisters or open wounds or anything. You will lose your feet. And those facts are undisputed. And it is against the record, against that background, that we have a competing narrative. We have, on the one hand, issues of safety compliance and policies and rules. And on the other hand, you have a unbroken period of 11 years where Ms. Holmes did not wear or was not required to wear these these so-called safety shoes. And so on these facts and on this record, a jury could reasonably conclude at least one of two things If there was a safety policy at General Dynamics, it was safety in name only. It wasn't on the ground, sort of a de facto versus a de jure policy. They say it on the one hand in writing, but when it rips down to the people on the ground, that's not how it's applied. Or, and this is just as reasonable, there's a safety policy at General Dynamics, but it is flexible for people such as Ms. Holmes, who have a medically justifiable basis for not having to comply with this particular policy. And we believe the district court erred in failing to recognize that the record evidence allowed for this conclusion. And in fact, we believe the record reflects that the district court, who is a fantastic district court judge, and I have the greatest of respect for him, but we believe the district court engaged in improper weighing of the facts as well as speculation about facts that um, and I point the court to J 5 71, which is part of the district court's opinion, where the district court talks about the undisputed facts show that General Dynamics had legitimate business reasons for requiring homes to wear safety shoes. Exempting her from this requirement could have jeopardized its certification and standing in various organizations and agencies. And the record doesn't reflect that the record reflects that for those persons for whom there was no medical justification for whom wearing steel toed shoes was an inconvenience, then that might have jeopardized a certification, but not as to the situation at bar. And Mr Mr Hawkins, this is Judge Keenan. Um, I'm concerned about how we would write an opinion in your favor in this case, because wouldn't we be required to say that an employer must allow an employee to continue a job that creates a safety risk for that employee? In other words, you seem to be suggesting there's an estoppel principle at work here that just because General Dynamics did nothing for 11 years, it can't do something now. And I'm very concerned that with regard to safety, uh, I don't see how we can say in the context of an 88 claim that an employer is required to allow an unsafe practice if that unsafe practice is required for the employee to maintain your job. Your Honor, that's an excellent question on that is that that is the headwind that I've been against the entire time in this case, and I think it is a focus on that. My response is that when talking about safety, when talking about an employer's decision to say, All right, this is our policy in this context, and I would ask the court in focusing on that question to look at the unique factual context that's before this court on this record. It isn't just that there is an 11 year record of of one behavior and then a switch. It's that that it's what that 11 year behavior signifies. It's what is it is properly inferred based on that 11 year behavior. Um, the it can't be that safety is such an important or overriding concern as to this requirement if it hasn't been enforced or hasn't been allowed to be enforced as to miss homes under these conditions. Um, and and and I point the court as well to the regulations or the interpretive guidance on OSHA that we provided, which allow for a balancing of safety considerations, safety of the employee versus safety issues for the company and say that requiring PPE to be worn is not, uh, a hard and fast rule where the wearing of that PPE would, in fact, create a hazard for the employee. And that regulation, um, it doesn't, like on all fours with this case, address that issue. But what it does do is it is it shows that it is it is not a situation where this court has to choose between blessing an unsafe practice or or saying that something is an unsafe practice versus saying that something is an accommodation or something is essential function. It's our position that any concerns about safety have already been reduced, if not eliminated by the courts or by the by general dynamics behavior over an 11 year period. And what I would say, Hawkins, Yes, Mr Hawkins. Um, this is Judge Mott. So, um, I'm I'm appreciate your argument because it looked in your brief as if you were assuming all safety standards. But is this a correct statement of your argument that your client has set forth an ADA claim because she has alleged facts supporting her contention that with reasonable accommodation, she could perform the essential essential functions of her job while complying with the employer's genuine safety requirements? That is our position. Is our contention. You know, that's the one to clarify. And I apologize if my brief was a little bit too focused on Miss Holmes versus safety considerations. I don't I don't I don't discount those, and I certainly don't under emphasize those. Um, but I do think that in this particular fact situation, um, arguments about safety and argument about compliance of certifications and those sorts of things are best stated to the jury. Be particularly because the record reflects that that despite saying these things were so so important, uh, the company did not even call. Oh, sure, did not even inquire as to whether or not there were any kind of of I won't say escape valves, but I'll say, um, ways to accommodate Miss Holmes under these circumstances. And I do think it's important to emphasize that she worked for 11 years without concerns about safety. Uh, and it's not an estoppel issue per se. But what it does show, at least in our opinion, is that it does show that there is a genuine dispute of fact as to whether or not this safety rule really does apply in this particular context. What we are not saying, and I want to be very clear about this. We are not saying that general dynamics has has no obligation to enforce safety rules, and we are not saying that anyone and everyone who has ever quote gotten away with or or been able to hide the fact that they were not wearing safe safety shoes is now somehow free and clear. That is not what we're saying. We're saying this is a situation where Miss Holmes and I do think the record is clear on this. She wasn't simply trying to disguise the fact that she wasn't wearing safety shoes for many years. What happened is somebody would come around and they would say, Do you have to wear your safety shoes? And she would show her her doctor's note. And that is a perfectly reasonable thing to do under these circumstances. And we invite the court to review and the case we cited in our rule 28 J letter, the Topka Tosca case, which says that if an employee has performed a job for several years without having to perform that essential function and has been successful, then it doesn't really look like an essential function. And I realized that we have the nuance of that is kind of the overlay here. But I don't think that rule is any difference. I think that rule is consistent with this court's opinion in Jacobs, and I think it's consistent with the CFR regulations that refer to the past practices of the incumbent employee when asking whether or not something is an is or is not an essential function. So we understand that there have been some quote areas of lax enforcement, but those at least on this particular record, um, Mr Hawkins, Mr Hawkins, this is Judge Keenan again. Um, I think there has been at least possibly some, uh, confusion as to whether we're dealing with an essential job function here or a qualification standard to perform the job. And if this is a qualification standard rather than an essential function, uh, what impact, if any, does that have on our review of the case? Well, to me, that makes it even easier because she's qualified for the job. No, but a standard. In other words, you can't do the job unless you wear the shoes as opposed to wearing the shoes being a function of the job. Is there a difference in the analysis there or not? Well, I don't think there's any doubt. I mean, and factually, it's true. I think you could perform the job without wearing the shoe. That's the the extra concern is that of safety. It isn't. It isn't one of those things that you have to be able to do. Like, it's not a it's not a lifting of a heavy drill or or the lifting of heavy items for purposes of your job. Um, this is so it's not a job function, then. Well, that's what we can say. It's the safety standard. Correct. As opposed to a job function. That is. That is compliant with that. I will also say or that it's it's very good. Conclude that we're compliant with that. Um, the last thing I'll say on this particular point before I leave for rebuttal is that this is not a direct evidence case, at least not at this time on this record, nor is it a business necessity case. This is a simple qualification. Do we meet the basic threshold elements for the A. D. A. And so in talking about things like direct threats or safety, those are the burden of the defendant, the appellee on. And those can be addressed, if at all, later down the road at trial. So we ask that the district court's decision be reversed. And we ask that the court recognized the genuine material genuine issues of material fact exist. Thank you. Okay. We're happy to hear from the other side. Good afternoon, Your on behalf of General Dynamics. Um, let me just begin by taking issue with a comment. The opposing counsel just made that there's a nuance of safety. That issue only a nuance in this case. Tennis shoes are not a reasonable accommodation for the workplace hazards that Miss Holmes faced in the shelter production area of the plant. As the record describes, this production area contains equipment drills which would have bits on them as well as the materials themselves that could crush a person's foot. That, in fact, is not in dispute. Miss Miss Holmes, lawyer before the trial judge that joined Appendix 5 39 admitted that there were these kinds of workplace hazards in the fabric in the shelter fabrication area in the plant. It's not reasonable to have an employee working in that area in tennis shoes. In fact, the compliance with this OSHA standard and the safety standard is set forth in the brief very clear. It says employers are to ensure that each affected employee uses protective footwear when working in the danger of foot injuries. There is no dispute that the hazards in this working area present a danger of foot foot injuries. Now, the company, as the record describes, was not fully compliant in enforcing this safety standard as to Miss Holmes. That is not in dispute, but it's never too late for a company to take corrective action and get into full compliance. And what happened in June of 2013 is they had an outside safety auditor come in as part of the certifications that Mr. Holmes, Miss Holmes' counsel identified to come in and evaluate the safety procedures in the plant and in during that audit they discovered that somebody, not Miss Holmes, but another employee was working in the shelter fabrication area and not wearing safety shoes. That triggered a write-up and if there was another violation like that, that would result in a major infraction and the company would be in jeopardy of losing those certifications which are necessary to do business with the federal government, especially DOD. So in response to that discovery, they decided it's not too late to take corrective action and to get into full compliance. As the record describes, the word went out, there were meetings with the supervisors that we are not making any exceptions anymore, including with respect to Miss Holmes, that we were going to come into full compliance. And as part of that process, they engaged in an interactive process with Miss Holmes, trying to find alternative safety footwear that would also accommodate her particular medical situation as well as the hazards in the workplace. This was not just insisting that she wear steel-toed shoes, there were efforts as were as were described to come up with other alternatives that had composite materials that would protect her feet from serious injury. In fact, the company indicated, and it's borne out in the record, that she actually could go and come up with custom-made shoes and the company would pay for it. So while counsel from Miss Holmes is saying there's a nuance of safety, I would argue that safety was paramount. And in fact, the EEOC has issued guidance and it's actually addressed in one of the cases that we cited, which is the Laviseo versus Broward County case, which actually involved an individual who also had diabetes, who had difficulty, who was unable to wear the steel-toed safety shoes. He took the position in the case that he should be able to wear sneakers and the court analyzed the how do you reconcile the need for honoring the OSHA mandate to protect feet from foot injuries, while at the same time addressing the obligations under the ADA to deal with reasonable accommodation. And the court discussed this EEOC guidance and in the EEOC guidance there's actually a fact pattern that's very similar to the fact pattern that's before the court. And it's discussed in footnote 6 of the opinion, but let me just, if I can, just tell you what the EEOC's guidance is. It's example 45. I'm just going to read it in full. An employer pursuant to an OSHA regulation requires employees to wear steel-toed boots. An employee has severe burns on his feet and legs that prevent him from wearing these types of boots. No accommodation is possible and so he asks for an exemption. The ADA does not prevent employers from complying with other other federal laws, including the Occupational Safety and Health Act, which requires employees working in certain jobs, industries, or positions to wear particular items of clothing or protective gear. Under these circumstances, the employer may insist that the employee wear steel-toed boots and because the employee cannot comply with this rule, he is not qualified. General Dynamics did not just insist that she wear steel-toed boots. As I indicated, they tried to come up with alternatives over almost a two-year period. During that two-year period, as the tried to find alternatives that would work. It wasn't simply steel-toed boots. Your Honor, with respect to the obligation to comply, the company, in fact, was trying to do a better job of it. There's no dispute about it, but it was an essential requirement of the job that this guidance that is cited in the briefs and discussed does not dictate a different result. The guidance does not say if there's a hazard, you can simply throw up your hands and just say we're going to agree to any and all accommodations, even if the accommodation does not protect the individual's foot. In fact, the guidance talks about the interactive process, which is what the company did, in fact, do here. From our point of view, Your Honor, there is no jury question because compliance with this OSHA standard is not optional. It is mandatory. While it is true that there was non-compliance with respect to Ms. Holmes for a significant period of time, as I've indicated before, it's never too late to take corrective action and get into full compliance. Finally, Your Honor, with respect to the issue of the sanctions, which I'm anticipating that counsel will address, we maintain that the court, district court, clearly weighed the evidence and concluded that the appropriate sanction in this particular instance was striking the late identified declarant. The omission was not substantially justified. The omission was not harmless, and as the cases say, the parties are not to engage in trial by ambush. There was an obligation on the part of counsel for Ms. Holmes to indicate to disclose sooner with respect to the initial disclosures as well as to the interrogatory answers that Ms. Bland was actually a fact witness that would rebut the company's statement that they were enforcing this particular OSHA safety policy. And on that, Your Honors, I will rest on our brief. Thank you very much. Do we have a rebuttal? Counsel? Mr Hawkins, you still there? I am. Thank you, Your Honor. I have just a very brief rebuttal. Um, the first thing I would do is I will refer to the case that my friend on the other side just referenced the Lubascio case. Um, and what I would say is what you don't have in that case, uh, is an issue of whether or not there was a pad, a past practice, which is central to our entire argument here. Um, and and it's also relevant to the issue of whether or not safety is, in fact, or compliance with the safety obligation is, in fact, something that cannot be exempted or something that cannot be adjusted. I and I've looked at other cases. The parties have cited cases to the to the court. I have not found any case where you have more than a decade's worth of practice, uh, that all of a sudden gets upended, um, in order to to, quote, strictly comply with an obligation for which the company should have been strictly complying from the very beginning. Uh, and it's not to say that you can't do that. I'm not saying that that, uh, a company can never change its mind. But But in this particular situation again, as we've stated that are at the opening, nothing changed. Absolutely nothing changed. The audit that they focus on didn't focus on an employee like Miss Holmes, who had a medical condition. It focused on somebody who was flouting the policy and had, uh, continuously flooded the policy and didn't want to follow the policy as general as a matter of convenience. That is not the situation we have here. Um, and we don't have a situation that the example from from counsel pointed out in the EUC guidance with with the burns, um, where it is a choice between not being able to perform a job and not complying with a safety procedure. We have a situation where we have a past practice that evidences and I think this is very important. It evidences that Miss Holmes has been safely performing this job for more than a decade. And so when you talk about safety concerns now, it falls on a little bit of a deaf ear. And I think and at this point, it certainly defeats the argument, at least at the summary judgment stage, uh, that that council is able or that the party here should be granted judgment as a matter of law as to essential functions and as to Supreme Court's lead and told him the cotton from about six years ago to paraphrase the Supreme Court. We believe that by weighing the evidence and reaching factual inferences contrary to the plaintiff's competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the non moving party. Okay, Mr Hawkins. Yes, this is Judge Keenan again. Let's make use of the author of the opinion of the court in your favor. And in writing the opinion, what are you going to say regarding why the OSHA requirement doesn't matter in this case? Why the OSHA requirement doesn't supersede all other considerations and anything other than a stopple because you've agreed that a stopple doesn't apply and press pack past practices doesn't apply. What are you going to say in the opinion as to why the OSHA requirement isn't determinative here in terms of general dynamics right to rely on the OSHA requirement to demonstrate a business necessity like the bait case in the Exxon case in the other circuits? Certainly. Um, what I would say is that I would say that that OSHA has the out and we have just we have we have cited it to the court. We cited to the district court. Uh, the guidance, the interpretive guidance that says you do not, you are not required to choose between one hazard or another when it comes to PPE. The other hazard here, which is not speculative, it's not, it's not, um, ethereal. It is a concrete hazard to, uh, Miss Holmes to, to, to, to have damage done to her circulatory system, her, her appendages, her, um, her feet. And you've seen the pictures. Um, what we have here is a plaintiff, an appellant who has the ability or has the hazard choice that OSHA allows. OSHA, OSHA allows for this kind of a choice, one versus safety, one hazard versus another hazard. And in this, and again, it's fact specific. And, and you're saying that that is the choice. Then is that where you're, where you're coming down on? Sounds like it. Well, I'm saying that you can't discount the employees hazard in those circumstances. Um, in this particular situation, the OSHA regulation allows for a flexible decision making process. And I guess I took to respond directly to your question, your honor. Um, in this particular instance and on this record, which is important, there was no question. I mean, they did a lot of interactive process about the type of shoe to be worn, but there was never any inquiry as to whether or not this regulation allowed for the flexibility that we one contend it does and to believe the facts support. And so on this record, that flexibility was never inquired into by, uh, general dynamics. And that would have been the way to defend against a past practice of 11 years in the other direction. So, uh, with that said, your honors, uh, I will, I will rest on the briefs as to the motion to strike. Um, and unless the court has any other questions, I would ask the court, reverse the district court, uh, and find at a minimum that material issues of disputed fact exist as to essential functions and reasonable accommodation. Thank you. Thank you both. Um, the case is submitted. I'll ask our clerk to adjourn court.
judges: Diana Gribbon Motz, Barbara Milano Keenan, Henry F. Floyd